### UNITED STATES DISTRICT COURT
### WESTERN DISTRICT OF KENTUCKY
### PADUCAH DIVISION

COREY A. LOVELACE                                              PLAINTIFF

v.                                                  NO. 5:22-CV-98-BJB

MCCRACKEN COUNTY, KENTUCKY, ET AL.                            DEFENDANTS

* * * * *

### MEMORANDUM OPINION & ORDER

Corey Lovelace filed this pro se civil suit in federal court against a number of government officials, law enforcement officers, and local citizens. His allegations, though not entirely clear, focus on harassment, intentional infliction of emotional distress, and the Fourteenth Amendment to the U.S. Constitution. While the bulk of his claims sound in state law and most of the defendants (like Lovelace) appear to be citizens of Kentucky, this case is in federal court based on the federal claims he has leveled against all but one of the defendants. Even assuming the truth of every fact Lovelace alleges, however, those federal claims would fail as a matter of law: the defendants are shielded by immunity covering the official actions Lovelace objects to. And even if they weren't, the facts Lovelace alleges still wouldn't expose them to damages. So the Court grants in part the defendants' motions to dismiss with respect to the federal claims, declines to exercise supplemental jurisdiction over the remaining state-law claims, and dismisses those claims without prejudice.

### ALLEGATIONS & PRIOR PROCEEDINGS

According to the amended complaint, which the Court must accept as true at this stage of the proceedings, Lovelace is married to Ashlynn Lovelace, the ex-wife of Danny Daniels. Amended Complaint (DN 5) ¶¶ 10, 21. The relationships between the Lovelaces and the Danielses (Danny, his wife Lauren, and his minor daughter) apparently caused conflict, to say the least. Lovelace believed the Danielses conspired with Jered Anderson (Ashlynn's ex-boyfriend) and Autumn Bakehouse (Anderson's girlfriend) to harass him, file false police reports, and violate his constitutional rights. ¶¶ 7–10, 20–25.[1]

_____

[1] This opinion recounts only the allegations most relevant to the issues raised by the motions to dismiss and the federal claims. The amended complaint covers many other incidents related to prescription-drug abuse, stolen cell phones, romantic relationships, child

1

These actions, according to Lovelace, led a McCracken County grand jury to indict him for making harassing communications and impersonating an ATF officer. DN 47-3[2]; Amended Complaint ¶ 25. Detective Jerry Jones of the McCracken County Sheriff's Department testified in a preliminary hearing that probable cause supported the harassment and impersonation charges—citing reports from several people, including the private defendants in this case. DN 47-2; Amended Complaint ¶ 25.

After the preliminary hearing, the prosecutor agreed to dismiss the impersonation charge, and Lovelace pleaded guilty to the harassment offense. DN 47-4. The state court accepted the plea and sentenced Lovelace to a 45-day term of imprisonment. DN 47-7. Before the sentencing hearing, Dustin Awbery, then a detective with the McCracken County Jail, allegedly harassed Lovelace by making fun of his charges on a third party's Facebook post. Amended Complaint ¶ 31; DN 5-1 at 20–23 (apparently trying to provoke Lovelace by commenting: "Bet u won't tell me ur a ATF agent"). Lovelace complained to law enforcement about Awbery (for harassment) and Jones (for perjury). Amended Complaint ¶¶ 30–31. He called and emailed McCracken County Sheriff Matt Carter, Chief Deputy Ryan Norman, and Assistant Commonwealth Attorney James Mills, demanding they investigate and prosecute Awbery and Jones. ¶¶ 30, 37–38. These three officials, according to the amended complaint, ignored the requests and did nothing. ¶ 39.

### THIS LITIGATION

Lovelace seeks damages under 42 U.S.C. § 1983 for alleged federal-law violations of the Equal Protection and the Due Process Clauses. He also asserts claims under state law regarding failure to investigate, perjury, intentional infliction of emotional distress, willful and wanton endangerment, negligent employment practices, and harassing communications. Amended Complaint ¶¶ 12–14.

After Lovelace served the defendants, some failed to answer or otherwise respond to the complaint within the time allotted by the Federal Rules. Three days

---

custody, ballfield confrontations, and other matters that are certainly concerning—though less relevant to the disposition of these motions.

[2] The amended complaint discusses the various court documents attached to the County Defendants' motion to dismiss. *See* DN 47 & exhibits. So the Court may consider these "public records … referred to in the Complaint and central to the claims contained therein." *Bassett v. NCAA*, 528 F.3d 426, 430 (6th Cir. 2008). And the Court may take judicial notice, even at the pleading stage, of official court records such as these. *See Buck v. Thomas M. Cooley L. Sch.*, 597 F.3d 812, 816 (6th Cir. 2010) ("Although typically courts are limited to the pleadings when faced with a motion under Rule 12(b)(6), a court may take judicial notice of other court proceedings.").

after the deadline, Lovelace sought a default judgment against two defendants. DN 27. Those defendants, also proceeding pro se, responded two days later; in very plain and direct language, they denied Lovelace's allegations and asked to be removed from the litigation. DNs 28, 29.[3]

Each defendant who was served eventually moved to dismiss Lovelace's claims. *See* DNs 24, 28, 29, 41, 44, 47.[4] Lovelace responded to all the motions except one filed on behalf of the County Defendants: McCracken County, Matt Carter, Ryan Norman, Jerry Jones, and Dustin Awbery. Because the legal deficiencies in the claims against those defendants are clear, the Court has not ordered Lovelace to respond.

### A. Default Judgment

When a defendant fails to defend a claim, a plaintiff may move for default judgment and "the clerk *must* enter the party's default." FED. R. CIV. P. 55(a) (emphasis added). But that rule says nothing about *when* the clerk must enter default—and the rule requires additional steps before judgment is entered against a party. Here Lovelace moved for a default judgment against Anderson and Bakehouse three days after their deadline to answer or move to dismiss passed. DN 27. Two days later—and before the clerk took any action in response to the default motion— these two defendants (proceeding pro se) responded with short statements that Lovelace's "allegations are false and misleading" and "failed to disclose any information that would [show] wrongdoing" on their part. DNs 28, 29. In response to an order from Magistrate Judge King, Bakehouse clarified that she intended the Court to construe her affidavit as a motion to dismiss. DNs 40, 44.

Should the Court enter (or already have entered) default in Lovelace's favor? To start, that's not precisely what he requested: Lovelace did not file for *entry* of default—a prerequisite to default *judgment* under Federal Rule of Civil Procedure 55. *See* WRIGHT & MILLER, 10A FED. PRAC. & PROC. § 2682 (4th ed.). But even construing his pro se motion as a request to the clerk for entry of default, the question turns out to be academic. Lovelace offers no reason why the clerk erred by not

---

[3] These defendants filed one-page "affidavits" or "requests" to be dropped from the case because Lovelace "shows no proof of any allegation made," DN 28, or because the "allegations are false and misleading," DN 29. Consistent with one defendant's response to the Magistrate Judge's order, *see* DN 44, the Court construes these pro se filings as motions to dismiss the claims against them under Rule 12(b)(6).

[4] One defendant, Lovelace's former partner Amanda Wallace, was never served. Lovelace moved to appoint a warning order attorney to help find and serve Wallace. DN 9. The Magistrate Judge denied this motion for failure to adhere to the Federal and Kentucky Rules of Civil Procedure. DN 38. Lovelace never refiled his motion.

entering default during the short period of time before these defendants responded. And regardless of whether the clerk should have entered or did enter default, that would not establish their liability to Lovelace. The entry of default necessitates a second step: seeking a default judgment. FED. R. CIV. P. 55(b). Lovelace took only one of the two required steps.

Even his first step wasn't irreversible. Before default judgment is entered, a "court may set aside an entry of default for good cause." FED. R. CIV. P. 55(c). Good cause includes a defendant producing a meritorious—although late—defense. *See Courser v. Allard*, 969 F.3d 604, 624 (6th Cir. 2020). This is a matter of judicial discretion, but the law strongly favors adjudication on the merits rather than technicalities—which typically means setting aside default. *Burrell v. Henderson*, 434 F.3d 826, 832 (6th Cir. 2006). That surely would've happened here had the defendants' objections arrived after a faster entry of default. This two-step process provides responsive-but-tardy defendants, like Anderson and Bakehouse, with an extra source of notice and an extra layer of protection against a judgment divorced from the facts and law. *Id.*

Under Rule 55(c), "[t]he factors for good cause are: (1) whether culpable conduct of the defendant led to the default, (2) whether the defendant has a meritorious defense, and (3) whether the plaintiff will be prejudiced." *Courser*, 969 F.3d at 624 (citing *Burrell*, 434 F.3d at 831). Mere delay in responding—particularly from a pro se defendant—is not enough to sustain default. *Dessault Systemes, SA v. Childress*, 663 F.3d 832, 841 (6th Cir. 2011). And responding to a complaint shortly after the deadline passes is generally enough to warrant setting aside the clerk's entry of default. *See id.*; *Oppenheimer v. City of Madeira*, 336 F.R.D. 559, 565 (S.D. Ohio 2020).

That is the case here. Nothing indicates, for example, that these defendants showed "an intent to thwart judicial proceedings" that would render them "culpable" and potentially stand in the way of a "good cause" finding. *Dessault*, 663 F.3d at 841. Similarly, filings made a few days late did not prejudice Lovelace, who must show "that delay will result in the loss of evidence, create increased difficulties of discovery, or provide greater opportunity for fraud and collusion." *Id.* at 842 (quoting *INVST Fin. Group, Inc. v. Chem Nuclear Systems, Inc.*, 815 F.2d 391, 398 (6th Cir. 1987)). At this stage the defendants need not show a likelihood of success because "even conclusory assertions may be sufficient to establish the hint of a suggestion needed to present a meritorious defense." *Id.* at 843.

Because good cause to set aside a hypothetical default exists, the Court would have set aside an entry by the clerk in any event. Nothing in the record indicates why the pro se defendants did not respond to Lovelace's amended complaint in a

4

timely manner.  But they each responded before the clerk acted—and did so only two days after Lovelace moved for default.  The responses, including a subsequent clarifying notice by Bakehouse, are sworn statements best construed as (ultimately successful) motions to dismiss for failure to state a claim.  *See, e.g.*, *Anderson v. County of Hamilton*, 780 F. Supp. 2d 635, 645 (S.D. Ohio 2011) (construing filing by pro se defendant as motion to dismiss) (citing *Erickson v. Pardus,* 551 U.S. 89, 94 (2007)).  Given the absence of culpable conduct or prejudice, and the presence of a meritorious defense, the Court denies Lovelace's motion for default judgment.  *See Dessault*, 663 F.3d at 844 (reversing district court's refusal to set aside default judgment).

## B. Motions to Dismiss

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Although courts must accept factual allegations as true, they need not accept "legal conclusions" and conclusory statements without factual evidence.  *Id*.  A claim's legal requirements provide an important framework for a complaint, but a "formulaic recitation of a cause of action's elements will not do." *Twombly*, 550 U.S. at 570.  A claim is plausible only if the complaint contains factual allegations supporting each of its "material elements." *Hunter v. Sec'y of U.S. Army*, 565 F.3d 986, 992 (6th Cir. 2009).

## 1. Federal Claims

Lovelace asserts federal claims against McCracken County, Jerry Jones, Matt Carter, Ryan Norman, and James Mills arising under 42 U.S.C. § 1983.[5]  That statute provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law....

---

[5] Awbery's motion to dismiss (filed jointly with McCracken County, Carter, Norman, and Jones) indicates that Lovelace alleged federal claims against *all* of the "County Defendants"—including Awbery.  DN 47-1 at 1.  But this reading is too generous: even viewing the amended complaint in the light most favorable to the pro se plaintiff, nothing in it alleges anything other than state-law claims against Awbery.

a. **McCracken County.**   The amended complaint asserts claims against Jones, Carter, and Norman in their individual and official capacities.   Official-capacity suits are treated as suits against the government who employs the individual defendant—in this case, McCracken County.   *See Brandon v. Holt*, 469 U.S. 464, 472 (1985).   So the federal claims against the County and these three County employees, acting in their official capacity, can be addressed together.

Lovelace asserts that these County Defendants refused to investigate and prosecute alleged perjury and harassment, Amended Complaint ¶ 31, and failed to adequately train and supervise employees, ¶¶ 31–33, in violation of the Due Process and Equal Protection Clauses, ¶ 32.   But "Congress did not intend municipalities to be held liable unless action pursuant to official municipal policy of some nature caused a constitutional tort."   *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 691 (1978).   Because of this, municipalities may not be held vicariously liable; their policies or customs must have caused the alleged constitutional violation.   *Id.*   "There are four methods of proving a municipality's illegal policy or custom: the plaintiff may prove (1) the existence of an illegal official policy or legislative enactment; (2) that an official with final decision making authority ratified illegal actions; (3) the existence of a policy of inadequate training or supervision; or (4) the existence of a custom of tolerance or acquiescence of federal rights violations."   *Wright v. City of Euclid*, 962 F.3d 852, 880 (6th Cir. 2020) (quotation omitted).

As to the failure to investigate or prosecute, Amended Complaint ¶¶ 30–33, Lovelace hasn't alleged anything remotely indicating that the County had a policy or custom of ignoring perjury or harassment charges.   And in any case this claim would fail because (as shown below) Lovelace hasn't shown an underlying constitutional violation that such a County policy conceivably could've caused.

As to the "failure to train or supervise claim," to prevail "the plaintiff must prove: (1) the training or supervision was inadequate for the tasks performed; (2) the inadequacy was the result of the municipality's deliberate indifference; and (3) the inadequacy was closely related to or actually caused the injury."   *Ellis ex rel. Pendergrass v. Cleveland Mun. Sch. Dist.*, 455 F.3d 690, 700 (6th Cir. 2006).   A plaintiff must plausibly allege "deliberate indifference to *constitutional* rights," not just any harm.   *Arrington-Bey v. City of Bedford Heights*, 858 F.3d 988, 994 (6th Cir. 2017) (emphasis added).   And the constitutional right asserted "must be clearly established[,] because a municipality cannot *deliberately* shirk a constitutional duty unless that duty is clear."   *Id.* at 995.

Lovelace makes no showing of prior incidents relating to a failure to properly train or supervise employees.   Although he states that this claim, like his other claims, is "clear" and will be proven through "additional discovery," ¶ 32, that is not

6

a sufficient response to a motion to dismiss, *see Iqbal*, 556 U.S. at 678–79 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to "unlock the doors of discovery…."). The amended complaint and accompanying exhibits contain nothing bearing on any of the four methods to prove an illegal policy or custom. And even if such evidence were presented, Lovelace has not plausibly pleaded any constitutional tort by a County employee that municipal policy or custom could've caused.

**b. Jered Anderson, Autumn Bakehouse, and Danny and Lauren Daniels.** Unlike an official-capacity suit, an individual-capacity suit under § 1983 requires a showing "that the official, acting under color of state law, caused the deprivation of a federal right." *Leach v. Shelby County Sheriff*, 891 F.2d 1241, 1245 (6th Cir. 1989).

Lovelace does not clearly assert a federal-law violation against Danny and Lauren Daniels, Jered Anderson, or Autumn Bakehouse; instead he contends they conspired to file a false police report, refused to file another report against someone else, and harassed Lovelace at a softball game. The amended complaint does mention due process in connection with these allegations, though it fails to connect that constitutional right with factual allegations that could—if proven—violate it. Amended Complaint ¶ 12.

Another concern is state action. Section 1983 provides relief for plaintiffs who suffer a deprivation of rights at the hands of a person or entity "acting under color of state law." *Boykin v. Van Buren Tp.*, 479 F.3d 444, 451 (6th Cir. 2007) (quoting *Tahfs v. Proctor*, 316 F.3d 584, 590 (6th Cir. 2003)). The Danieless' motion to dismiss rests in part on the contention that this Court lacks subject-matter jurisdiction to consider the claims against them because they are not state actors. DN 41-1 at 2–3. That is only partly right: state action isn't a jurisdictional question, *Boykin*, 479 F.3d at 451, but it *is* a required element of a § 1983 claim that Lovelace has failed to plead.

The Danieless, Anderson, and Bakehouse are private individuals with no alleged connection to a governmental body. The allegations offer very little information regarding their stations in life or role in these events. When defendants are not clearly part of a government entity, plaintiffs may attempt to show they are nevertheless state actors based on a number of judgemade doctrinal tests: "(1) the public function test, (2) the state compulsion test, and (3) the symbiotic relationship or nexus test." *Boykin*, 479 F.3d at 451 (quoting *Chapman v. Higbee Co.*, 319 F.3d 825, 833 (6th Cir. 2003) (en banc)).

The amended complaint fails to provide any facts or allegations that could show that Jered Anderson, Autumn Bakehouse, Danny Daniels, or Lauren Daniels

acted under color of state law under any theory.  And the nature of the allegations against them support this view: they allegedly harassed Lovelace as private citizens, not government officials, based on soured intimate relationships and child-custody disputes.  *See* Amended Complaint ¶¶ 7–10, 20–24.  So to the extent Lovelace alleges federal claims against the Danielses, Anderson, and Bakehouse, those claims fail for lack of state action.  *Boykin*, 479 F.3d at 451.

**c. James Mills.**  Mills is an assistant commonwealth's attorney whom Lovelace asked to investigate Dustin Awbery for allegedly harassing Lovelace on Facebook, Amended Complaint ¶ 31, as well as Jerry Jones for allegedly committing perjury as a witness against Lovelace in a criminal proceeding, ¶ 28.  *See* DN 24 at 3.  Mills, according to Lovelace, did not investigate or prosecute either of these individuals, but instead acted "very aggressive[ly]" toward Lovelace.  ¶ 39.  Read charitably, Lovelace alleges Mills violated the Due Process Clause by not investigating and prosecuting as Lovelace requested, and by maliciously prosecuting Lovelace in the state criminal proceedings Mills initiated against Lovelace. ¶¶ 31, 38.[6]

With respect to Mills's alleged failure to investigate and prosecute Lovelace's rivals, this would not violate the Constitution or give rise to damages even if what Lovelace alleges is true.  The Constitution does not require "the State to protect the life, liberty, and property of its citizens" by enforcing laws in the manner a citizen requests.  *DeShaney v. Winnebago County Dep't of Soc. Servs.*, 489 U.S. 189, 195 (1989).  The Due Process Clause is not "a guarantee of certain minimal levels" of law enforcement.  *Id.* Many courts have dispatched similar claims that a prosecutor didn't investigate or litigate with the zeal preferred by a private citizen.  *See Hernandez v. City of Goshen*, 324 F.3d 535 (7th Cir. 2003) ("[T]he City had no duty to the residents of Goshen to provide a police department whose policy is to investigate threats of violence, even credible ones….."); *Przybysz v. City of Toledo*, 746 F. App'x 480, 482–83 (6th Cir. 2018) ("The substantive component of the Due Process Clause generally does not require the State to protect the life, liberty, or property of its citizens from private actors."); *Pierce v. Springfield Twp.*, 562 F. App'x 431, 438 (6th Cir. 2014) ("A state is not subject to liability under *DeShaney* … unless it takes an affirmative action that exposed [a plaintiff] to a danger to which he was not already exposed.") (cleaned up).  So Lovelace fails to state a plausible claim for constitutional relief against Mills (or

---

[6] This is a *very* charitable construction of Lovelace's allegations.  Though he never directly states a malicious-prosecution claim against Mills, he does say that Mills's actions as a prosecutor were "outrageous," made "with complete disregard to human decency," and amounted to "a "United States Constitutional Violation of … Liberty."  Amended Complaint ¶ 32.

any other defendant, including Matt Carter and Ryan Norman) based on an alleged failure to investigate and prosecute his accusations of perjury and harassment.

And regarding malicious prosecution, to the extent that claim is before the Court, it fails for an even simpler reason: Mills didn't prosecute Lovelace. DN 24 at 4. Lovelace doesn't allege that Mills was involved in the charging decision. Mills notes this in his motion to dismiss, *id.*, and Lovelace doesn't take issue with that characterization, DN 35 at 2. A § 1983 claim for malicious prosecution requires a plaintiff prove that (1) the defendant was involved in the decision to prosecute, (2) the prosecution lacked probable cause, (3) the plaintiff was deprived of their liberty due to the proceedings, and (4) "the criminal proceedings were resolved in the plaintiff's favor." *See Hartman v. Thompson*, 931 F.3d 471, 485 (6th Cir. 2019) (citing *Sykes v. Anderson*, 625 F.3d 294, 308–09 (6th Cir. 2010)).

The prospect of relief for Lovelace fails at the first step: Mills was not "involved in the decision to prosecute" him. *Id.* And Lovelace entered a guilty plea in the state case for harassing communications, so the proceedings were not "resolved in the plaintiff's favor." *Id.*; *see* DN 24 at 4; DN 24-1 (pleading guilty to violation of KRS § 525.080). In any event, prosecutors enjoy absolute immunity from § 1983 liability when acting within their role in the judicial process—including charging decisions, conduct before a grand jury, and interaction with witnesses. *Adams v. Hanson*, 656 F.3d 397, 402 (6th Cir. 2011) (collecting cases). Lovelace doesn't allege Mills did anything outside this role. A prosecutor's conduct regarding charging decisions "preliminary to the initiation of a prosecution" lies within the function of the prosecutor's office and is therefore protected by absolute immunity. *Burns v. Reed*, 500 U.S. 478, 486 (1991) (quoting *Imbler v. Pachtman* 424 U.S. 409, 431 n.33. (1976)).

**d. Matt Carter and Ryan Norman.** Read liberally, Lovelace's amended complaint arguably asserts a malicious-prosecution claim against Carter and Norman in their individual capacities as well. He does not, however, identify any connection between them and the prosecution. And as discussed, the proceedings did not resolve in his favor. So these claims cannot survive against Carter and Norman, either. Lovelace also alludes to Due Process Clause and Equal Protection Clause claims, but he alleges no facts or arguments in support. A bare recitation of the constitutional provisions plainly won't suffice to survive a motion to dismiss. *See Iqbal*, 556 U.S. at 678–79.

**e. Jerry Jones.** As noted above, Lovelace alleges that Jerry Jones, a McCracken County detective, committed perjury when he testified at Lovelace's probable-cause hearing. The amended complaint asserts Jones falsely testified that Lovelace had impersonated an ATF officer to solicit sex and intimidate witnesses against him. Amended Complaint ¶¶ 25–28. According to Lovelace, the judge in this

hearing believed Jones was lying, describing the testimony as "[b]izarre" and "obviously [not] true." ¶¶ 26–27. Even assuming such allegations assert a Due Process or Equal Protection violation, any such claim would clearly fail.

Lovelace included a transcription of portions of the probable-cause hearing as part of his amended complaint. (The origin of the transcript is unclear.) Accepting this account as true, the excerpts supplied by Lovelace themselves make clear that Jones's testimony couldn't possibly support any liability: the state-court judge didn't say Jones's testimony was untrue, but rather that *Lovelace's* statements (that he was an ATF officer) were obviously not true. "[I]f he [Lovelace] is saying they should do so or go to jail because of his authority [as an] ATF agent … it's obviously not true." ¶ 25 (adding, aptly, that "[t]his is one … of the most bizarre fact patterns I have heard in quite a long time"). Nothing in the amended complaint contradicts Jones's testimony as reported by Lovelace. And Lovelace's guilty plea (while not dispositive) certainly does not help his claim that Jones lied on the stand. *See* DN 47-5.

Regardless, the Supreme Court has squarely held that "witnesses are absolutely immune from damages liability based on their testimony, and [has] rejected the … contention that government officials who testify about the performance of their official duties may be held liable under § 1983 even if other witnesses may not." *Briscoe v. LaHue*, 460 U.S. 325, 326 (1983). Either Jones testified as a private individual and was not acting "under color of law" at Lovelace's probable-cause hearing, or else he testified in his official role and is therefore protected by absolute immunity based on his role in the judicial process. *Id.* at 329–30 ("It is beyond question that, when a private party gives testimony in open court in a criminal trial, that act is not performed 'under color of law.'"). This is true even if the witness knowingly provides false testimony. *Id.* at 345–46.[7]

## 2. State-Law Claims

Lovelace has alleged a number of other claims under state law against the County, the Danielses, Anderson, Bakehouse, Mills, Jones, Carter, and Norman. Because most of these defendants are, like Lovelace, citizens of Kentucky, the Court lacks diversity jurisdiction over these remaining claims. Courts may, in their discretion, exercise supplemental federal jurisdiction over state claims even after dismissing the federal claims anchoring a case in federal court. *See* 28 U.S.C. § 1367(a); *Carnegie–Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988). But that approach is generally disfavored. "[T]he balance of considerations usually will point

---

[7] These defendants also argue that these claims are barred by the statute of limitations, *see, e.g.*, DN 47-1 at 4–6, but the Court needn't address this issue because the claims all fail under FED. R. CIV. P. 12(b)(6) and the doctrine of absolute immunity.

to dismissing the state law claims, or remanding them to state court if the action was removed." *Musson Theatrical, Inc. v. Fed. Exp. Corp.*, 89 F.3d 1244, 1254–55 (6th Cir. 1996) (citing 28 U.S.C. § 1367(c)(3)). "After a 12(b)(6) dismissal, there is a strong presumption in favor of dismissing supplemental claims." *Id.* at 1255. This presumption may be overcome only by "unusual circumstances" that prejudice the plaintiff by leaving state court as the only option. *Id.* (quoting *Nolan v. Meyer*, 520 F.2d 1276, 1280 (2d Cir. 1975)).

Nothing specific to this case suggests these state claims ought to be heard in federal court. So the Court declines to exercise jurisdiction over them or adjudicate the motions to dismiss. The same course is even more appropriate with respect to the sole defendant who faced only state-law claims: Dustin Awbery.

### C. Time Limit for Service

When Lovelace filed his original complaint on July 28, 2022, he received a summons to serve on every defendant. DN 3. Lovelace failed to serve Amanda Wallace. He couldn't locate her and moved on August 22, 2022 to appoint a warning order attorney to find and serve Wallace in "Georgia or Florida." DN 9 at 2. The Court denied this motion without prejudice on September 29, 2022 for failure to comply with the Federal and Kentucky Rules of Civil Procedure governing such a motion. DN 38. Although the Court's order gave Lovelace ample guidance regarding how to file an appropriate motion for a warning order attorney, he never refiled the motion in the intervening eleven months.

Plaintiffs are required to serve defendants in a timely manner. *Nwokocha v. Perry*, 67 F. App'x 912, 914 (6th Cir. 2003). If they fail to do so without showing good cause, "the Federal Rules of Civil Procedure compel dismissal." *Id.* (quoting *Byrd v. Stone,* 94 F.3d 217, 219 (6th Cir.1996)).[8]

Lovelace has not shown good cause for the lack of service. Despite the Magistrate Judge's guidance, appropriate for a pro se plaintiff, he has not indicated he has served (or attempted to serve) the last remaining defendant. So the Court dismisses his claims against Amanda Wallace without prejudice under FED. R. CIV. P. 4(m).

---

[8] Fed. R. Civ. P. 4(m) states:

> If a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.

### ORDER

The Court denies the motion for default judgment (DN 27), grants in part the motions to dismiss filed by the County, the Danielses, Mills, Jones, Carter, Norman, Anderson, and Bakehouse with respect to the federal claims (DNs 24, 28, 29, 41, 47), and dismisses the claims against Wallace without prejudice.  The Court declines to exercise supplemental jurisdiction over the remaining state-law claims and therefore also dismisses those claims without prejudice.

Although the dismissal of Lovelace's federal claims is with prejudice, Lovelace remains free to refile his state-law claims in state court.  The Court notes that the "stop the clock" provision in federal law, 28 U.S.C. § 1367(d), tolls the state statute of limitations for 30 days following dismissal based on a federal court's decision not to exercise supplemental jurisdiction.  *See Artis v. D.C.*, 583 U.S. 71, 75 (2018).

Benjamin Beaton, District Judge

United States District Court

September 29, 2023

12